**UNITED STATES of America**

v.

**James LINDSAY, Jr., Appellant.**

**No. 73–1691.**

United States Court of Appeals,
. District of Columbia Circuit.

Argued April 18, 1974.

Decided Oct. 7, 1974.

Carleton A. Harkrader, Washington, D. C. (appointed by this Court) with whom was Thomas W. Brunner, Washington, D. C., for appellant.

Steven R. Schaars, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, John A. Terry and John E. Drury, III, Asst. U. S. Attys., were on the brief for appellee. Earl J. Silbert, U. S. Atty., also entered an appearance for appellee.

Before EDWARDS,* Circuit Judge for the Sixth Circuit, and TAMM and WILKEY, Circuit Judges.

TAMM, Circuit Judge:

Appellant James Lindsay, Jr., seeks review of his conviction on one count of robbery (22 D.C.Code § 2901) arising out of an April 3, 1972 armed robbery of a McDonald's Restaurant. On appeal, he contends that the district court erred by (1) not suppressing certain evidence alleged to be the fruits of an unconstitutional police entry and (2) not directing a verdict of acquittal at the close of all the evidence. Finding that the police entry violated appellant's fourth amendment rights, we reverse.

I

Early on the morning of April 3, 1972, two armed men accosted the clean-up crew at the McDonald's Restaurant at 4950 South Dakota Avenue, Northeast, Washington. Each robber wore a ski mask; one was later described as wearing a dark mask and dark clothing, and the other a light colored jacket with gold stripes and a green mask with yellow stripes, through which a protruding mustache could be seen. Tr. 110–11. The two men forced the night manager to open the restaurant safe, herded and then locked all the employees in a bathroom, and escaped with approximately $2700 and the manager's car. Tr. 110, 134–35.

The robbery proceeds included money the night manager had prepared for deposit the following day, $596.22 wrapped in bands stamped with the restaurant's address and then placed with accompanying deposit slips into Suburban Trust Company deposit bags. Tr. 118, 298–99. The robbers also took Raj Malhorta's, the night manager's wallet. Tr. 135.

Approximately ten minutes after the robbery, the employees freed themselves from the barricaded bathroom. Mr. Malhorta immediately discovered his car was missing and called the police. When the police responded shortly thereafter, they were given a description of the robbers and the stolen automobile, including a partial license plate number. Tr. 111–12.

At approximately 4:35 a. m., Metropolitan Police Officers Rufus Jenkins and Gerald Awkard were parked at the corner of New York Avenue and Bladensburg Road, Northeast, when they heard a radio transmission concerning the McDonald's robbery which contained a description of a yellow Dodge Charger with Maryland plates. Almost at the same moment, Officer Jenkins noticed an automobile matching that description stopping for a traffic light at the intersection. The police followed as the car turned onto New York Avenue and subsequently into the parking lot of the Diplomat Motel where two men alighted. Tr. 141–42.

The officers parked, and Officer Jenkins chased the driver who had proceeded around the end of the motel building. He assumed that his partner was chasing the other suspect who was heading away from the motel toward New York Avenue. Tr. 143. However, Officer Awkard, having failed to see the passenger alight from the car, also pursued the driver. Tr. 45–46.

Officer Jenkins ordered the driver, later identified as William J. Smith, to stop, and Smith did so, halting as he

* Sitting by designation pursuant to 28 U.S.C. § 291 (a).

stretched toward a partially open motel room door. Smith closed the door, and went toward the officer, where he was apprehended. Tr. 32–34. While patting Smith down, Officer Jenkins felt a bulge in his right jacket pocket and removed $390 in cash with Suburban Trust Company money wrappers stamped with McDonald's address. Tr. 143–45.

The two officers took the suspect back to McDonald's Restaurant where Officer Wayne Stallings recognized Smith and identified him by name and Mr. Malhorta identified him by voice, apparel, and mustache as one of the robbers. Mr. Malhorta was then driven to the motel where he identified and took possession of his car. Tr. 147–49.

At the motel, the police in searching for the other occupant of the car knocked on several of the motel room doors. Tr. 71. When Officer Stallings arrived, he identified a lavender and white Cadillac parked near room six as a car he had seen on prior occasions in the possession of Smith. Tr. 213. Upon checking with the night room clerk, the police discovered that Smith was registered at the motel in room six. Tr. 185–86.

The police entry into room six is the prime issue in this case. It is sufficient to say at this point that once the police entered the room they found appellant. A policeman then noticed some objects under one of the beds. Further search uncovered money in McDonald's deposit bags and wrappers hidden in a wall heating-air conditioning register and ski masks and rolls of coins under the bed; Lindsay was arrested. Tr. 190–94. Police estimated that about forty-five minutes had elapsed from the initial radio transmission to the entry into room six. Tr. 74. Lindsay's fingerprints were found on Smith's Cadillac; the McDonald manager's wallet was found inside the car. Tr. 288, 197.

Lindsay was indicted for armed robbery, robbery, unauthorized use of a vehicle, and assault with a dangerous weapon. Prior to trial, appellant moved to suppress all items seized in room six of the Diplomat Motel, alleging that they were the fruits of an unconstitutional police entry. At the suppression hearing, Officer Stallings testified as to the actual entry into room six. Once the police discovered that Smith was registered in that room, they proceeded to the room accompanied by the night clerk who had a passkey. Officer Stallings testified that:

Eventually we knocked on the door two or three times and the door was opened by Lindsay. We identified by our badge and Lindsay just more or less stood there and we just walked into the room.

Tr. 71.

Once inside, Stallings continued, the officers "spread around a little." Someone then spotted clothing under the bed. Tr. 72. As the bed was raised, money came into view. Officer Stallings noticed that a wall heat register had been tampered with and discovered additional money inside. Tr. 73. On the basis of this testimony, the trial judge denied the motion to suppress without making written findings or conclusions.

At trial, Officer John A. Sabella, the arresting officer, gave conflicting testimony as to the manner of entry into room six. Officer Sabella testified that the police, after proceeding to the room with the residential manager, knocked four to six times but received no response. They then asked the manager to unlock the door. When he unlocked the door, it was secured on the inside by a chain lock. Officer Sabella then asked the sergeant if he could force the door open. The sergeant stated no, but simply reached in and unlocked the chain lock. Tr. 186–87. Once the door was open, the police observed Mr. Lindsay "standing by the second bed against the wall." Tr. 187. After the police entered the room, Lindsay "stood there very silent, doing nothing, just stood there." Tr. 190.

Officer Stallings also testified at trial. In response to the question, "Who opened the door?", he replied: "I am

not certain, I thought it had been Mr. Lindsay." Tr. at 220.

Appellant testified in his own behalf at trial. He stated that he had registered at the Diplomat Motel that night, in the company of a young woman. About 1:00 a. m., he walked her to Bladensburg Road where she hailed a taxicab. Tr. 353–55. Upon returning to the motel, he noticed the car of his friend Smith. After calling out Smith's name, Lindsay was invited into room six, where he chatted for awhile with Smith and an unknown male companion. Lindsay testified that eventually Smith and his friend left, while Lindsay fell asleep on the bed, hearing nothing until the police opened the door with a passkey. Tr. 355–57.

At trial, appellant renewed his motion to suppress which was again denied. Tr. 301. The trial judge granted appellant's motion for a judgment of acquittal on the charge of unauthorized use of a vehicle. Tr. 348. The jury found Lindsay guilty of one count of robbery. Tr. 431. On appeal, appellant urges two grounds for reversal: (1) that the trial court erred in refusing to suppress the evidence seized in the motel room and (2) that the evidence against him was insufficient as a matter of law. Since we conclude that appellant's conviction must be reversed because the trial court failed to suppress unconstitutionally seized evidence, we do not reach the issue of the sufficiency of the evidence.

## II

We must determine whether the police's entry was justified by the "exigencies of the situation" or was constitutionally impermissible because of their failure to obtain prior judicial endorsement. *See* McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948). *See also* Coolidge v. New Hampshire, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). If, while denying appellant's motion to suppress on this issue, the trial judge had made written findings, our function would have been to determine only if those findings were clearly erroneous. *See* United States v. Montos, 421 F.2d 215, 219 n.1 (5th Cir.), cert. denied, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532 (1970). Since findings were not made, we should uphold the rulings of the trial court if there is any reasonable view of the evidence to support it. *See* Scarbeck v. United States, 115 U.S.App.D.C. 135, 317 F.2d 546, cert. denied, 374 U.S. 856, 83 S.Ct. 1897, 10 L.Ed.2d 1077 (1963).[1]

The issue before us, therefore, requires us to exhaust the various combinations of factual alternatives and legal theories presented. Our standard of review obligates us to focus on both Officers Stallings' and Sabella's versions of the police entry and on whether the trial court's legal conclusion is sustainable under any recognized fourth amendment doctrine.[2] We turn first to the issue that both parties have extensively

---

1. We note at the outset, and the parties do not seriously dispute, that Lindsay has the requisite standing to raise a fourth amendment objection to the entry into room six. Lindsay was in the motel room at the invitation of the registered guest and thus falls squarely within the Supreme Court's holding in Jones v. United States, 362 U.S. 257, 267, 80 S.Ct. 725, 734, 4 L.Ed.2d 697 (1960), that "anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him."

2. Since Officer Stallings was the only witness who testified at the suppression hearing as to the police entry, the trial court judge presumably found his version credible. At trial, both Stallings and Officer Sabella testified as to the manner of entry. Since the trial judge could have found either version more credible in denying appellant's renewed motion to suppress, we must uphold the trial judge under *Scarbeck* if the entry can be justified under either version of the facts. *See* Scarbeck v. United States, 115 U.S.App.D.C. 135, 317 F.2d 546, cert. denied, 374 U.S. 856, 83 S.Ct. 1897, 10 L.Ed.2d 1077 (1963).

briefed and argued—the applicability of this court's *Dorman* doctrine.

### A. *The Entry as Sustainable under the* Dorman *Exception.*

■ The Government argues that the police entry is sustainable under the standards established by this court in Dorman v. United States for a warrantless entry to effectuate an arrest. 140 U.S.App.D.C. 313, 435 F.2d 385 (1970) (*en banc*). In *Dorman* we recognize that no general exception to the warrant requirement existed simply because the entry was for the purpose of making the arrest of a suspected felon. *Id.* at 390–391. However, we also recognize that principles of "urgent need" gave rise to an exception justifying a warrantless entry to make an arrest and indicated seven factors which were material to that determination:

(1) That a grave offense is involved, particularly a crime of violence;

(2) the suspect is reasonably believed to be armed;

(3) a clear showing of probable cause;

(4) a strong reason to believe that the suspect is in the dwelling;

(5) the likelihood of escape if not swiftly apprehended;

(6) a peaceable entry as opposed to a "breaking"; and

(7) the time of entry (night or day).

*Id.* at 392–393. *See also* United States v. Shye, 492 F.2d 886, 891 (6th Cir. 1974); United States v. Harris, 140 U.S.App.D.C. 270, 435 F.2d 74 (1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971); Vance v. North Carolina, 432 F.2d 984 (4th Cir. 1970).

In the instant case, there is no dispute that the first two factors are met, a crime of violence with a suspect reasonably believed to be armed. On the other hand, Lindsay vigorously asserts that there was no clear showing of probable cause. The Government contends that that there was a clear showing since "the police, as part of a complete search of the area in which the escaped robber was last seen, justifiably concluded that Smith's room was a probable hiding place for one if not both missing robbers." Appellee's Br. at 21.

■ The Government, however, misinterprets the requirement. *Dorman* establishes that the police should be able to demonstrate before the disputed entry a clear showing of probable cause that the suspect committed the crime involved. Dorman v. United States, *supra*, 435 F. 2d at 392–393. In *Dorman,* for example, the defendant left a probation report containing his name and address at the scene of the crime. *Id.* at 387.

■■ In the case at bar, no evidence was introduced to link the defendant with the scene of the robbery. At the time of the entry, the police possessed no evidence at all connecting Lindsay to the crime. Under either the Stallings or Sabella version of the entry, Lindsay was not immediately placed under arrest. The room was slowly entered, evidence of the crime then began to be discovered, and only then was Lindsay arrested. This sequence of events undercuts the Government's assertion that they clearly had probable cause to arrest appellant at the time of the entry. The fact that once inside the police search uncovered ample evidence to establish probable cause has no relevance here. As the Court remarked in United States v. Di RE, 332 U.S. 581, 595, 68 S.Ct. 222, 229, 92 L.Ed. 210 (1948): "[A] search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success." (Footnote omitted.)

As to the fourth factor, a strong reason to believe that the suspect is in the premises, the Government notes that in *Dorman,* the police proceeded to Dorman's house at 10:00 p. m., not on any special knowledge that Dorman was home, but because concepts of reasonableness and probable cause justified looking for a man at home after 10:00 p. m. The Government then argues that those same grounds "suggest looking for

a robber in the room of an accomplice, especially in the circumstances of this case." Appellee's Br. at 22.

However, several factors belie the Government's assertion that the police had the necessary *strong* belief. The police last saw Smith's accomplice as he left the McDonald manager's car, heading away from the motel. If this accomplice believed that Smith had been apprehended, it is just as likely that he would never return to the motel room registered in his associate's name. Moreover, under either version of the facts, the police went to room six with a passkey, which infers that they did not expect to find anyone in the room. All of these facts cast doubt on the Government's assertion that in the circumstances of this case, the police had a *strong* reason to believe that the suspect was on the premises being entered.[3]

The Government contends that the fifth factor, the likelihood of escape without swift apprehension, is amply met here by the fact that delay might have allowed the suspect to escape, especially since the police did not know his identity. Appellant argues that a motel room could be easily guarded by one person with no possibility of escape while a warrant was obtained. Both arguments seem of equal weight. As to whether the entry was peaceable, the sixth standard, the testimonies of the two officers involved differ. While, if Officer Sabella's version is accepted, a breaking did occur, we will assume that the entry was peaceable, as Officer Stallings testified.

The final element of the *Dorman* test is whether the entry occurred at night. We said in *Dorman* that a nighttime entry "may elevate the degree of probable cause required, both as implicating the suspect, and as showing that he is in the place entered . . . ."[4] Dorman v. United States, *supra,* 435 F.2d at 393. That the entry here occurred during the early morning hours compounds the possible inadequacy of the Government's showing of probable cause and of its belief that the suspect could be found in the motel room, as discussed above.

Consequently, we find that the police entry cannot be sustained under the *Dorman* exception. We do not base our conclusion on the Government's failure to meet any specific factor, despite our doubts about the adequacy of their showing as to factors three and four in light of factor seven. It is sufficient to conclude that in looking at all the circumstances surrounding the entry into room six, the Government has failed to demonstrate the "urgent need", as exemplified by the *Dorman* standards, to justify the warrantless entry to make an arrest.

B. *The Entry as Sustainable by Virtue of Appellant's Consent.*

Officer Stallings testified at the suppression hearing that when the police knocked on the door of room six, Lindsay opened it. He then said: "We identified by our badge and Lindsay just more or less stood there and we just walked into the room." Tr. 71. This testimony raises the possibility that the police entry is sustainable on the basis of appellant's consent.

The Supreme Court recently discussed in Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the standards for consent in fourth amendment situations. The Court rejected the suggestion that the police, to rely on a waiver, must demonstrate that the individual possessed knowledge of his right to refuse to con-

---

3. Such a strong reason would be like the one in United States v. Honesty, where a neighbor could tell the police that the suspect was located inside the apartment entered. 148 U.S.App.D.C. 255, 459 F.2d 1279, 1280–1281 (1971).

4. In *Dorman,* we also recognized that "the late hour may underscore the delay . . .

[in] obtaining a warrant." Dorman v. United States, 140 U.S.App.D.C. 313, 435 F.2d 385, 393 (1970) (*en banc*). This factor is no longer applicable, since a 24-hour magistrate is now available. *See* Appellant's Br. at 22–23.

sent and instead held that the voluntariness of a consent is a question of fact to be determined from the totality of all the circumstances. *Id.* at 227, 93 S.Ct. 2041, 36 L.Ed.2d 854.

█ The circumstances present here, according to police testimony, were that Lindsay opened the motel room door and then stood mute while the police entered the room. As we said previously in Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649, 651 (1951):

> The Government must show a consent that is "unequivocal and specific", [and] "freely and intelligently given." Thus, "invitations" to enter one's house, extended to armed officers of the law who demand entrance, are usually to be considered as invitations as secured by force. A like view has been taken where an officer displays his badge and declares that he has come to make a search, even where the householder replies "All right." A finding of consent in such circumstances has been held to be "unfounded in reason". Intimidation and duress are almost necessarily implicit in such situations; if the Government alleges their absence, it has the burden of convincing the court that they are in fact absent.

(Citations omitted.) *See also* Gatlin v. United States, 117 U.S.App.D.C. 123, 326 F.2d 666 (1963). Here, we have silence, even less evidence of voluntary consent than an invitation offered when confronted with armed officialdom. Certainly appellant's silence in the face of a group of police at his door can give rise to no inference of any ·invitation to enter unsecured by force. Moreover, the police, while "identifying by badge," gave no indication as to the purpose of their late night visit. Our inescapable conclusion, therefore, is that there was no showing of a voluntary consent to the police entry.

### C. The Entry as Sustainable on a Theory of Hot Pursuit.

█ In Warden v. Hayden, 387 U.S. 294, 298–299, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the Supreme Court recognized as an exigent circumstance the "hot pursuit" of a suspected felon. In *Hayden,* the police were informed that an armed robbery had taken place and that the suspect had entered the dwelling only five minutes previously. Speed and a continuous knowledge of the alleged perpetrator's whereabouts are the elements which underpin this exception to the warrant requirement. *Id. See also* Dorman v. United States, *supra,* 435 F.2d at 401–402.

█ Here, however, the police did not enter in hot pursuit of anyone. The registered occupant of the room, William Smith, was already in custody. His accomplice was last seen fleeing from the motel, and knowledge of his whereabouts had been lost to the police for at least a half hour before the entry. There is no evidence that the police approached room six to attempt the speedy apprehension of any suspect. Once again, the fact that the police came with a passkey undercuts argument that they were in hot pursuit of the second robber. We cannot sustain the entry on this ground.

### D. The Entry as Sustainable as Part of a Search Incident to Arrest.

█ A recognized exception to the warrant requirement is a search conducted pursuant to a lawful arrest. *See* United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). We must, consequently, examine whether the entry was such a search.

█ There is no basis in the record to sustain the entry as a search incident to appellant's arrest. Under Officer Sabella's version, the entry was accomplished before appellant was discovered. Focusing on Officer Stallings' testimony, Lindsay was not arrested when he answered the door, nor was there probable cause at that point to arrest him. In fact, the police entered, and their search of the room provided the basis for appellant's arrest.

█ The question remains whether the police could constitutionally make a warrantless search of Smith's

motel room after he had been arrested and removed from the scene of the arrest. The police, upon arresting Smith, had the right to conduct a full search of his person.[5] United States v. Robinson, *supra.* Moreover, the Supreme Court recently held in United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L. Ed.2d 771 (1974), that a person lawfully arrested may be searched and the effects in his possession seized even after a substantial time lapse between the arrest and search. The scope of the *Edwards* rule, however, will not validate the police practices here. The entry into room six was not a search of the accused himself, but a search of his previously occupied premises in quest of evidence. As police testimony demonstrates, Smith never entered the room after the robbery. If the police wanted to search the room for evidence which might lead them to Smith's accomplice, their interests would be sufficiently protected by first obtaining a warrant.[6] To allow the police to make a warrantless search of any premises on the sole ground that it had been occupied by an arrestee prior to his commission of a crime would make a mockery of the fourth amendment. This we will not allow.

### III

We have attempted to ascertain if there existed any reasonable factual or legal view of the evidence to support the trial court's ruling.[7] We have found none. We recognize that the police would have been negligent in performing their investigative duties if they had failed to search Smith's room at some point. However, in the factual context of this case, no exigent circumstances existed, no urgent need that prevented the police from taking the time necessary to obtain a warrant.

Our duty is clear. At trial the prosecution introduced evidence[8] against appellant which was the fruit of an unconstitutional police entry. The conviction cannot stand. We reverse and remand to the district court with directions to vacate its judgment.

It is so ordered.

---

5. In fact, when the police stopped Smith as he stretched toward the partially opened door, Officers Jenkins and Awkard would have been justified at that point to check the interior of the motel room for their protection. They did not do so. Of course, once the police removed Smith from the scene and later returned, that exigent circumstance of protection no longer remained.

6. As discussed in connection with the *Dorman* standards, one police officer could have adequately sealed off the motel room to prevent anyone from entering to destroy evidence.

7. We, as all appellate courts, are often facilitated in factual situations such as this by having the reasons or reasoning of the trial court. However, in this case, the court cannot conceive of reasoning which would justify the constitutionality of the police entry. Hence, we reach the merits without remanding for further findings.

8. It is obvious that the introduction of the evidence seized in the motel room was not harmless constitutional error as it was the only evidence directly linking Lindsay to the robbery. *See* Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).