**John E. WILLIAMS, Jr., Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Jan. 2, 1975.

Stephen B. Potter, Wilmington, for defendant below, appellant.

Jeffrey M. Weiner and Joseph A. Hurley, Deputy Attys. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

McNEILLY, Justice.

The defendant seeks review of his conviction for possession with intent to sell a dangerous drug, a narcotic drug, a central nervous system drug, possession of a hypodermic syringe, and four counts of conspiracy. The question presented, is whether the police were justified in a warrantless entry and subsequent search and seizure of contraband.

I

As a result of a court-ordered wiretap, the police learned that a known drug trafficker (hereinafter referred to as "the sus-

pect") was anticipating a delivery the next afternoon from a room in a certain motel. The police through previous dealings with the suspect, as well as through their experience and training in the drug traffic, knew the information received could as easily be untrue as true. At a meeting of the police the next morning the evidence obtained was evaluated, and it was decided that there must be corroboration before action could be taken. A stake out was decided upon. Since the suspect was black, a trooper was sent to the motel to determine if any rooms were occupied by black persons.

Initially it was learned that there was only one room at the motel so occupied, and that room was registered in the name of a person unknown to the police. Parked outside the room was a car which was registered in the name of an unknown person with a Chester, Pennsylvania address.

The police positioned two officers in the room adjacent to the suspected room and established another group across the courtyard. During the course of the late morning and afternoon, the defendant, a black man, was seen leaving the room under surveillance and walking to the rear of the car parked in front. He opened the trunk and hood of the car, and for approximately fifteen or twenty minutes stood around the car and appeared to be checking out the area. This occurred at least twice during the afternoon, and at one point he was observed to be working under the hood with a pair of pliers.

During the afternoon surveillance the police had received information from police sources that the suspect, driving a black and yellow Lincoln automobile, had been observed and followed at various times throughout the day aound the streets of Wilmington, but at no time did he appear to be heading toward the motel.

At approximately 2:30 p. m., an automobile with Florida tags was driven into the parking lot and parked in front of the room under surveillance. Five unknown black persons got out of the car and entered the room. Thereafter, the officers in the adjoining room could hear a tapping noise which to the experienced officers sounded like the cutting of drugs, but which, in fact, could also have been the tapping of playing cards.

At 5:50 p. m., the suspect appeared at the motel parking lot in the black and yellow Lincoln, exchanged a few words with defendant who was at the time standing alongside his car, and then entered the room under surveillance. Defendant continued to remain outside for a few moments and then he too entered the room.

The officer in charge of the surveillance, by reason of his training, his past experience with drug dealers, and the fact that the original wiretap information had now been corroborated, felt he had probable cause to believe there were drugs in the room which would be distributed quickly. Knowing that motel rooms, like motor vehicles, are quick distribution points for drugs, and places of fast disbursement by participants, he concluded that they must enter the room without delay, detain the occupants and secure the contents of the room to avoid the chance of the occupants being alerted to the presence of police and destroying any evidence which might be in the room. After detaining the occupants and securing the contents the police anticipated obtaining a search warrant which would have taken approximately one and one-half hours.

As the police neared the door they were surprised to see the door open and the occupants moving toward the door apparently in the process of leaving. They immediately pushed their way into the room. In the back of the room was seen an open flight bag with white powder inside in plain view. After seeing the white powder, which was believed to be drugs, all occupants, including defendant, were placed under arrest. A further search of the room and occupants was continued, and more contraband was found. If the entry without a warrant was proper under the circumstances—and that is the basic question for decision—the subsequent search

and seizures were proper since the initial contraband, i. e. the white substance in the flight bag, was in plain view. See Miller v. State, Del.Supr., 310 A.2d 867 (1973).

## II

■ Defendant contends that probable cause to search the motel room existed hours before the actual raid, and the failure of the police to obtain a warrant invalidated the unauthorized entry and search. In support of his contention defendant relies upon the series of events and circumstances which followed the initial wiretap conversation and the arrival at the motel of the five black men at 2:30 the next afternoon. He claims that those facts should have indicated to a reasonable man that contraband was in the room and that a search warrant should then have been sought. He further argues that any exigent circumstances which arose were the creation of the officers and the prosecutors themselves in not analyzing the evidence more quickly so that a search warrant could have been obtained prior to the entry.

The State, on the other hand, contends that there was not probable cause to obtain a search warrant until the arrival of the suspect in the black and yellow Lincoln; that his arrival corroborated their prior suspicions and created exigent circumstances which called upon them to act without delay.

The State further submits that the circumstances which existed prior to arrival on the scene by the suspect could just as reasonably have inferred lawful activity as unlawful activity. We agree, and we further agree that the wiretap information required corroboration before the police could reasonably believe that unlawful activity was imminent. See Wilson v. State, Del.Supr., 314 A.2d 905 (1973).

## III

■ As stated in Patrick v. State, Del.Supr., 227 A.2d 486, 489 (1967):

"The general rules governing searches and seizures are subject to the exception of emergency situations, sometimes called the 'exigency rule'. The reasonableness of an entry by the police upon private property is measured by the circumstances then existing." (Citing cases) See also, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971).

In Vale v. Louisiana, 399 U.S. 30, 35, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970) the United States Supreme Court listed a number of exceptions to the requirements of a search warrant, that is to say, consent to the search, response to an emergency, hot pursuit of a fleeing felon, and seizure of goods in the process of being destroyed or of goods about to be removed from the jurisdiction.

More recently, the United States Court of Appeals for the Third Circuit in United States v. Rubin, 474 F.2d 262 (C.C.A.3rd Cir., 1973), cert. denied 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68, (1974) held:

"When Government agents, however, have probable cause to believe contraband is present, and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified."

Reasonableness is a flexible concept which must be considered with regard to the totality of the circumstances and with particular regard to the balancing of the needs of effective and reasonable law enforcement with the rights of privacy of the individual. See United States v. Rubin, supra; State v. Gary Alan Reader, et al., Del.Super., 328 A.2d 146 (1974); compare United States v. Lindsay, D.C.Cir., 506 F.2d 166 (1974).

## IV

■ In the instant case the totality of the circumstances prior to the arrival of the known suspect, although suspicious in nature to police trained and experienced in drug traffic, were insufficient to constitute

probable cause. The sole issue, therefore, is whether the suspect's arrival, and his entrance into the motel room involved, closed the gap between mere suspicion and reasonable belief of unlawful activity, and, if so, was an emergency situation thereby created. We think so.

At that point in time the suspicions were corroborated, although instead of just meeting the contact at the motel as indicated by the wiretap, the entire transaction appeared to be occurring in the motel room. There were six unknown individuals in the room and, based on previous experience, the police knew it was only a matter of minutes until the negotiations would be completed and the purchasers would leave with their newly acquired drugs. The police concluded that time was of the essence and that the circumstances required an immediate entry for the purpose of securing the persons and contents of the room until a search warrant could be obtained granting them the power to seize any contraband found therein. In our opinion these were sufficient "exigent circumstances" and the warrantless search was reasonable.

Affirmed.