**Hispano S. WARD, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 10368.**

District of Columbia Court of Appeals.

Argued July 22, 1976.

Decided Oct. 15, 1976.

John J. McGonagle, Jr., Washington, D. C., appointed by this court, for appellant. John C. Newman, Washington, D.C., was also appointed post-argument by this court for appellant.

John L. Kern, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry, William D. Pease and Hamilton J. Fox, III, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER and MACK, Associate Judges, and HOOD, Chief Judge, Retired.

NEBEKER, Associate Judge:

Appellant Ward was convicted of assault with a dangerous weapon (D.C.Code 1973, § 22–502), and carrying a pistol without a license (D.C.Code 1973, § 22–3204). He claims on appeal, as he did in the trial court, that he had standing as a guest to challenge a warrantless search of a premises, and, therefore, the fruits of that search should have been suppressed by the trial court. The trial court ruled that a purported consent to the search was of no validity and that a security search was not justified. After foreclosing these theories to justify the search, the court held that, in any event, the accused had "no expectation of privacy" as to a suitcase found on the floor near him which contained the seized evidence—a pistol holster.[1] We reverse.

Ward and one Edward Wheeler had an argument which culminated when appellant removed a gun from a holster which he was carrying and fired at Wheeler. Ward then went to the third-floor apartment of friends whom he visited on a regular basis. In the meantime, Wheeler notified police and accompanied them to the apartment. The door to the apartment was ajar and, through the open door, Wheeler identified Ward as his assailant. The officers entered the apartment and effected an arrest. After advising Ward of his rights, the police asked if they could search what they assumed to be his apartment. Ward assented to the search. Although no gun was found, a shoulder holster was recovered from a suitcase. No other occupant of the searched premises was asked for or gave consent to the search.

▉ The trial court found that no valid consent to the search was given by Ward.

In addition, the trial court noted that if standing were established, the holster would have to be suppressed because Ward was handcuffed to a chair and posed no threat justifying a protective search of the area near him. However, because Ward acknowledged no proprietary interest in the suitcase or the holster found therein, and claimed during testimony no expectation of privacy respecting those items, the trial court held that he lacked standing to challenge the search. Because Ward was legitimately on those premises, we conclude that he had standing to contest the legality of the search and seizure.

Our holding is based on the facts surrounding the definitive statement in *Jones v. United States*, 362 U.S. 257, 267, 80 S. Ct. 725, 734, 4 L.Ed.2d 697 (1960), that

[n]o just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. . . .

Ward's presence on the premises was unquestionably legitimate and in no way trespassory or wrongful.

▉ We are persuaded to this view from the facts underlying the above statement in *Jones*. Jones was the occasional occupant of an apartment to which the owner had given him a key. The police searched the apartment while Jones was present, and seized narcotics which Jones was seen to place in a bird's nest located in an awning outside a window. Thus, like Ward, Jones was not the owner of the searched premises and had little subjective expectation of freedom from governmental intrusion (a concept later to be spoken of in a Fourth Amendment context in *Katz v. United States*, 389 U.S. 347, 88 S.Ct 507,

---

1. No gun was found, but the holster was identified by the complainant as the one used to hold the pistol.

19 L.Ed.2d 576 (1967)). We think it follows that if Jones had standing to challenge the search in his case, so does Ward. When one like Ward is lawfully present in a searched premises, his rights under the Fourth Amendment cannot, in a context of a general search of the immediate area, be segmented. If he has any Fourth Amendment protection, it is in the immediate premises or an area used by him (*Jones v. United States, supra* 362 U.S. at 259, 80 S. Ct. 725),[2] and contents—such as a suitcase not his—cannot be carved out of that protection even if he did not know of the suitcase or consciously thought he had no interest in it.

■ Accordingly, since the trial court based its ruling exclusively on this segmented view of Fourth Amendment interest and held alternatively that the facts precluded any other basis for justifying the search (*e. g.,* a protective search of the immediate area), we are left no alternative but to conclude that the ruling was legally erroneous.[3] The conviction is reversed and the case remanded for a new trial where issues of credibility will have to be resolved without the corroborative weight afforded the holster and its identification by the victim of the assault.[4]

*Reversed and remanded.*

2. It should be noted that our holding is not a general exposition of Fourth Amendment standing of guests or other permissive temporary occupants or visitors under all circumstances. Each case must turn on its own facts. In *Jones v. United States, supra,* the accused placed the narcotics where they were found. In *Mancusi v. DeForte,* 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968), the accused had custody of the seized records. There well may be cases where a Fourth Amendment interest of a guest or visitor does not extend to a remote area or object because a personal interest could not rationally extend that far.

3. If the trial court had made a general ruling denying the motion to suppress, "we should uphold . . . the trial court if there is any reasonable view of the evidence to support it." *United States v. Lindsay,* 165 U.S.App. D.C. 105, 109, 506 F.2d 166, 170 (1974), citing *Scarbeck v. United States,* 115 U.S.App. D.C. 135, 317 F.2d 546 (1963). *But now see* Fed.R.Crim.P. 12(e), requiring "essential findings" of fact. No such provision binds the trial court or changes the posture of review in this court to one of evidentiary support for the specific findings made.

4. Since credibility between the two versions of what happened was the central issue at trial, we cannot say that the constitutional error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).