Ernest H. **CARTER, Jr.,**
Defendant–Appellant,

v.

**STATE of Delaware, Plaintiff–Appellee.**

Supreme Court of Delaware.

Submitted June 3, 1980.
Decided June 25, 1980.

Alfred J. Lindh (argued) and Dennis J. Siebold, Wilmington, for defendant–appellant.

Norman A. Barron (argued), Deputy Atty. Gen., Wilmington, for plaintiff–appellee.

Before DUFFY, McNEILLY and QUILLEN, JJ.

DUFFY, Justice:

Ernest H. Carter, Jr. (defendant) was convicted in the Superior Court of conspiring to promote the commission of a felony, namely, the delivery of a narcotic Schedule II controlled substance (cocaine), in violation of 11 *Del.C.* § 512,[1] and he has appealed

---

1. 11 *Del.C.* § 512 provides that:

"A person is guilty of conspiracy in the second degree when, intending to promote or facilitate the commission of a felony, he:

(1) Agrees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit the felony; or

(2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony, and he or another person with

asserting four grounds for reversal of the judgment.

## I

The facts relevant to the appeal are as follows:

On October 25, 1977, the Wilmington Bureau of Police had in place a court–ordered wiretap on a telephone located in the apartment of one Stanley D. Lum, a suspected drug dealer. In the early morning hours of that day, police officers monitored several calls which Lum received; they interpreted the calls to mean that a transaction in drugs was to take place, and that Lum and one Randolph Bowers were to bring a set of scales to the Ramada Inn, located at the intersection of Routes 1 and 202 in Delaware County, Pennsylvania, where they would meet Carter in Room 305.

To corroborate their interpretation of the phone calls, the police initiated a surveillance of Lum. Lum met Bowers and the police followed them as the two men, occasionally taking evasive action, traveled north in Bowers' van into Pennsylvania and to the Ramada Inn parking lot. An automobile registered in Carter's name was in the parking lot. Lum and Bowers entered the Inn. The officers maintained watch and, about thirty–five minutes later, they saw Carter, Lum and Bowers leave the Ramada Inn and move both Carter's car and the van to the back of the Inn. Thereafter, the police saw Lum and Bowers leave the grounds of the Inn in Bowers' van. The police officers followed the van and stopped it, approximately ten minutes later, after it had entered the State of Delaware; Lum and Bowers each had in his possession approximately one–quarter pound of cocaine. A .25 caliber pistol was also found in the van.

The officers returned to the Ramada Inn and they, with other police officers, knocked on the door of defendant's room. He was registered in Room 305. They first announced that they were from room service but, after a response was not made, the police identified themselves as law officers. After waiting about thirty seconds without receiving a response, the officers unsuccessfully tried to use a pass key to enter the room and then broke through the door. They found defendant lying on the bed and arrested him for violation of Federal narcotics laws. Carter refused permission to search the room but, within a short time, a Federal warrant was obtained and a search was performed. Approximately one–half pound of cocaine was found, together with a number of empty plastic bags and a large amount of money.

In a non–jury trial, defendant was convicted of conspiracy in the second degree and, after sentencing, he docketed this appeal.

## II

We first consider Carter's contention that the Delaware Courts lack subject matter jurisdiction over his conduct because "no element of the alleged crime took place within" this State.

The Trial Judge determined that jurisdiction had been established under 11 *Del.C.* § 204(a)(2), and we agree. That Statute states as follows:

"(a) Except as otherwise provided in this section a person may be convicted under the law of this State of an offense committed by his own conduct or by the conduct of another for which he is legally accountable if:

. . . . .

(2) Conduct occurring outside the State is sufficient under Delaware law to constitute a conspiracy to commit an offense

---

whom he conspired commits an overt act in pursuance of the conspiracy."

Delivery of a Schedule II substance (cocaine) is made a felony in 16 *Del.C.* § 4752, which provides as follows:

"Except as authorized by this chapter, any person who manufactures, delivers or possess-

es with intent to manufacture or deliver a controlled substance or a counterfeit controlled substance classified in Schedule I, II, III, IV or V which is not a narcotic drug is guilty of a felony . . ."

within the State and an overt act in furtherance of the conspiracy occurs within the State . . . ."

The Statute applies to a conspiracy conceived outside Delaware which is evidenced by an overt act within this State. *Saienni v. State*, Del.Supr., 346 A.2d 152 (1975). See the Commentary to § 204.

The facts in the record establish that conduct which occurred outside Delaware constituted, under Delaware law, a conspiracy to commit a crime in this State, and that an act in furtherance thereof occurred here. Carter's conduct outside Delaware was the delivery of a quarter pound of cocaine to Lum and Bowers, respectively. That conduct constituted a conspiracy because the transaction was made with the understanding that those two persons intended to distribute the drugs in Delaware;[2] and when Lum and Bowers returned to this State after the transaction, with intent to distribute the cocaine,[3] that was an overt act in Delaware. The Trial Judge explicitly or implicitly found such facts and there is sufficient evidence to support those findings. It follows that situs of the offense is here for jurisdictional purposes. Cf. *James v. State*, Del.Supr., 377 A.2d 15 (1977).

## III

Defendant's second argument is that the warrant to search his room at the Ramada Inn was defective because it was based on an affidavit which was not shown to be reliable.

In order for a search warrant to issue, the supporting affidavit must establish probable cause.[4] This Court has defined probable cause as "a common-sense determination; the affidavit in support of a search warrant must state facts sufficient to warrant a reasonable man in the belief that seizable property would be found in a particular place," *Edwards v. State*, Del. Supr., 320 A.2d 701, 703 (1974).

When, as here, the affidavit is based on incriminating information given to the affiant by a third party informer, it is sufficient to establish probable cause if the information itself is sufficiently incriminating, and there is reasonable corroboration. As this Court stated in *Wilson v. State*, Del.Supr., 314 A.2d 905, 907 (1973):

"The affidavit can establish probable cause either by setting out the incriminating personal observations of a reliable affiant (usually a police officer who is presumptively reliable), or it may be based on incriminating reports to the affiant by some informer or third party

---

2. A conspiracy is an agreement to perform or aid someone else to perform an illegal act. See 11 *Del.C.* § 512, *supra.*

3. While an actual distribution was not made (because of timely police work), Lum and Bowers returned to Delaware immediately after purchasing the cocaine, which implies that they intended to distribute the drugs in this State, especially since both resided in Delaware and there is no indication in the record of a connection with another jurisdiction. 16 Am.Jur.2d *Conspiracy* § 18 (1964).

As to the overt act, see the Delaware Criminal Code Commentary to 11 *Del.C.* § 511, which states that:

"[i]t need not be an act which would amount to a 'substantial step' as defined in § 532, but may be any act in pursuance of or tending toward the accomplishment of the conspiratorial purpose. It is sufficient that any of the conspirators has committed an overt act."

4. The legal standard for issuance of a search warrant is stated in Article I, Section 6 of the Delaware Constitution, which prohibits issuance thereof "unless there be probable cause supported by oath or affirmation." 11 *Del.C.* § 2306, which prescribes the requirements for the contents of an application for a search warrant, provides as follows:

"The application or complaint for a search warrant shall be in writing, signed by the complainant and verified by his oath or affirmation. It shall designate the house, place, conveyance or person to be searched and the owner or occupant thereof (if any), and shall describe the things or persons sought as particularly as may be, and shall substantially allege the cause for which the search is made or the offense committed by or in relation to the persons or things searched for, and shall state that the complainant suspects that such persons or things are concealed in the house, place, conveyance or person designated and shall recite the facts upon which such suspicion is founded."

witness; i. e., hearsay. If the affidavit is based on hearsay, it must contain reasonable corroboration of the hearsay reports. Under the twofold standard set out in *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964), this means (1) that the magistrate must be satisfied that the affidavit reveals the underlying circumstances from which the informant drew the conclusion that criminal activity had occurred; and (2) that there are sufficient reasons for believing that the informant's information is reliable."

■ Here, the affidavit meets both requirements. It describes the criminal activity in detail, including the date, location and nature thereof, and it named the particular individuals involved. Thus, it was sufficiently explicit to permit the magistrate to infer that the informant had particular knowledge of the criminal activity, and that he was not relying on "casual rumor." *Marvel v. State*, Del.Supr., 290 A.2d 641, 643 (1972). In addition, the affidavit contained sufficient corroboration. The police had placed Lum under surveillance after monitoring the telephone calls and they had observed his actions from the meeting with Bowers through the journey to the Ramada Inn and the meeting with defendant. All of that was consistent with and confirmed what the officers had heard in the wiretap. The apprehension of Lum and Bowers shortly after that meeting, and the discovery of a large quantity of cocaine on each of them, provided further confirmation of the hearsay information implicating defendant in illegal activities.

To paraphrase the Supreme Court's comment in *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 1631, 10 L.Ed.2d 726 (1963), saying that this coincidence of information was sufficient to support a reasonable belief of the police officers that Carter was involved in an illegal drug transaction is certainly to indulge in understatement[5] about them.

For this reason, we conclude that defendant's attack on the warrant is without merit.

## IV

Next, defendant contends that the police illegally executed the search warrant, by failing to comply with the "knock–before–entry" rule. We conclude that, under the circumstances, the police complied with the Rule.

■ This Court stated the legal test for executing a search warrant in *Marvel v. State, supra* at 644:

"The question is to be decided in accordance with Federal constitutional standards. These require, generally speaking, that the police, prior to entry, announce their presence, authority and purpose in seeking entry [citations omitted]. There is no particular time required following the announcement by the police of their presence and their actual entry. It depends on the circumstances and the apparent ability that delay would give the occupants to dispose of relevant evidence."

In *Marvel*, the Court determined that the entry of the police officers was reasonable: they had entered after going to the door of the apartment in question and announcing their identity; at that point, without receiving a response from the defendant, they used a pass key, opened the door and walked in.

■ The facts of this case are almost identical. The officers went to the door of Room 305, announced their presence, waited for thirty seconds without receiving a response and, after unsuccessfully trying to enter with a pass key, forcibly made their way inside. We hold that *Marvel* controls this case and that entry of the police was "not unreasonable, and was therefore not

---

5. In holding that the affidavit in this case established probable cause in that it contained incriminating, corroborated evidence, we considered the affidavit as a whole, as the magistrate was obliged to do. *Marvel, supra* at 644; *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

unlawful." *Marvel, supra* at 644;[6] *Ker v. California, supra.*

## V

Defendant's final argument is that the Trial Court erred by admitting into evidence extra–judicial statements made by the alleged co–conspirators.

 The legal test for admissibility is whether there is independent evidence of a conspiracy. *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974). Here, sufficient independent evidence existed: the police officer saw defendant with Lum and Bowers, they witnessed the evasive tactics of the two individuals, and they discovered a substantial quantity of cocaine (and a pistol) when they apprehended Lum and Bowers on their return to Delaware shortly after the two men had met with defendant. Cf. *Williams v. State*, Del.Supr., 331 A.2d 380 (1975); *Bender v. State*, Del.Supr., 253 A.2d 686 (1969). Thus, the Trial Judge did not commit error in admitting the extra–judicial statements.

Affirmed.

---

**6.** The different methods of entry do not affect our consideration of the police action. *Keiningham v. United States*, D.C.Cir., 287 F.2d 126, 130 (1960). We note that while the police did not expressly state their purpose, we believe that, viewing the totality of the circumstances, their warning was reasonable. *Tatman v. State*, Del.Supr., 320 A.2d 750 (1974).