**UNITED STATES of America**
v.
**Leonard SMITH, Appellant.**
No. 71–1852.

United States Court of Appeals,
District of Columbia Circuit.

Sept. 26, 1972.

As Amended Oct. 3, 1972.

Messrs. Edgar H. Brenner and Steven P. Lockman, Washington, D. C. (appointed by this Court), were on the brief for appellant.

Mr. Harold H. Titus, Jr., U. S. Atty., was on the brief for appellee. Messrs. John A. Terry, Warren L. Miller, and James F. McMullin, Asst. U. S. Attys., were also on the brief for appellee.

Before McGOWAN, LEVENTHAL, and MacKINNON, Circuit Judges.

PER CURIAM:

Appellant was convicted of assault with intent to commit rape in violation

of D.C.Code § 22–501 [1] for which he received a sentence of one to five years in prison. His appeal principally challenges the admission into evidence of a benzidine test which was administered at the police station and allegedly indicated the presence of blood on his penis shortly after the assault. The trial judge held a pretrial hearing and denied appellant's motion to suppress the results of the test. We sustain his ruling and the admission into evidence of the result of such test and affirm the judgment of conviction.

## I

The jury found that appellant, with intent to rape, had assaulted the four and one-half-year-old daughter of a woman with whom he was living. The assault was viewed through a hole in a bedroom door by the six-year-old daughter and was corroborated by substantial physical evidence. The victim's eyes were red and swollen and caked with tears, and her mother testified:

> I started to examine her and I screamed. I got the towel and I wet it so I could wipe her off. . . . I saw blood and bowel movement and I saw some white stuff. . . . I thought it was some of the sperms or discharge or something. . . . I use the word torn and busted up. . . . Her rectum was bleeding . . . she had blood, red all around her rectum. . . . (Tr. 64).

A timely inspection by the victim's grandmother and by a medical doctor (obstetrics and gynecology) at District of Columbia General Hospital confirmed abuse and damage to the child's rectum and vagina. Appellant and the grandmother's husband were the only men known to be in the house at the time. The house was so arranged that the grandmother would have noticed any person entering the apartment where the children were playing.

An immediate complaint was made to the police and two detectives came to the house to investigate the allegations. The detectives asked appellant to accompany them to police headquarters "to get the matter straightened out" and the trial judge concluded that this constituted an arrest. Appellant was advised of his constitutional rights from a form which he signed (Tr. 95, 181–183). In response to police questions appellant declared that none of the several women with whom he had had sexual relations during the past few days had been menstruating (Tr. 178, 185).[2] It was then explained to appellant that the police would like him to undergo a benzidine test "to see if there was a show of blood" (Tr. 179). The mechanics of the test [3] were outlined, and appellant was advised that if the test results were positive he would be charged with the offense, if negative, he would be released (Tr. 179). Appellant replied that "he had no fear about the test because he knew it wouldn't come up positive" (Tr. 181). At headquarters the technician explained the principles of the test to appellant (Tr. 187). When simple visual inspection of appellant's penis disclosed nothing unusual (blood would

---

1. D.C.Code § 22–501 provides:
   Every person convicted of any assault with intent to kill or to commit rape . . . shall be sentenced to imprisonment for not more than fifteen years.

2. A He said that he had had relations with other women in the past several days.
   Q And did he say whether or not any of those had been on their period?
   A He stated that none of them had been.
   Tr. 178.

3. The benzidine test consists in swabbing the suspected area with cotton that has been saturated with water. The cotton is then immersed in a benzidine solution. "If blood is present you will get a bright bluish-green reaction from the benzidine solution." Even the most minute quantity of blood will trigger the reaction (Tr. 98). The instant test was administered to the area in "the ridge directly under the helmet [of the penis which] is a general catching place for stains. It doesn't necessarily or normally come in contact with clothing and so on. So this is the area that I examined" (Tr. 99).

have been unusual), the benzidine test was performed (Tr. 188). "There was a positive color reaction" (Tr. 99). At trial, in response to evidence of the positive reaction which resulted from the benzidine test appellant changed the story he had given to the police at the time of his arrest and claimed that the night before the alleged offense he had had sexual relations with a neighbor, whose name he could not recall, who had begun to menstruate during their act of sexual intercourse (Tr. 118). When cross examined about this inconsistency with the prior statement that he had made to the police, appellant attempted to reconcile the inconsistency thus:

> But, see, they asked me have I had intercourse with anybody who was on a period. But I didn't have intercourse with anybody who was on a period at that time. I had intercourse with somebody who came on the period. (Tr. 119–120).

## II

■ Appellant now contends that the administration of the benzidine test upon his person was an unreasonable search and seizure in violation of the Fourth Amendment and resulted in a deprivation of his right to counsel as guaranteed by the Sixth Amendment. In reply to these claims the trial court found: [4]

> (1) appellant was not entitled to counsel at police headquarters and did not seek counsel; (2) appellant consented to the test, even though his consent was not required; (3) the test was incident to a lawful arrest based upon probable cause; (4) the test was "purely chemical," as opposed to "medical" within the meaning of Schmerber v. California [384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)].

Appellant prefaces this claim by an assertion that the detectives did not arrest him. However, Form PD–47 (Tr. 182) which was read to him and which he signed states in the first sentence, "You are under arrest"; and the trial judge found that he had been arrested. We agree with the finding of the trial court which means that the test was a search incident to a lawful arrest. We also conclude that the search was reasonable since it was obviously necessary to conduct the test as promptly as possible because of the ease with which the evidence could be destroyed by a thorough washing. The simplicity of the test makes it unnecessary to have it conducted by a physician. It is a chemical test not a medical test and was properly administered by a trained police technician. His qualifications were not questioned. Having found that the test was administered pursuant to a valid arrest (for which there was probable cause), the constitutional validity of the test as a valid search is recognized by Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). It should also be noted that Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969) stated:

> [I]t is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. . . . In addition, *it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.* (Emphasis added.)

Since we find the test was reasonable and was conducted pursuant to a valid arrest we need not go on to find, as the trial court found, that appellant had properly consented to the test.

## III

■ With respect to appellant's claim that he had a right to counsel at the police station when the benzidine test was administered we note: (1) he was advised of his right to counsel; (2) he did

4. District Court memorandum opinion, p. 2.

not request counsel (as the trial court found); and (3) counsel was not required. The last point was determined in United States v. Wade, 388 U.S. 218, 227–228, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967) where the Supreme Court held that counsel was required at a line-up but not at

> "various other preparatory steps, such as systematized or scientific analyzing of the accused's fingerprints, *blood sample, clothing, hair, and the like.* We think there are differences which preclude such stages being characterized as critical stages at which the accused has the right to the presence of his counsel. *Knowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts.* The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial." (Emphasis added).

■ The benzidine test is obviously one of the preparatory steps which is excluded from the Sixth Amendment right to counsel. Since it is constitutionally valid to take an internal blood sample for scientific analysis pursuant to a valid arrest where, as here, there was an urgency to prevent the destruction of evidence, certainly it is permissible to take an external sample of blood by a simple cotton swab. Schmerber v. California, *supra,* 384 U.S. at 770, 771,

86 S.Ct. 1826. We see no similarity to the situation present in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or to the law there announced. If counsel had been present and counselled against submitting to the test, such advice would have been futile because the police were entitled to make the test. Schmerber v. California, *supra,* 384 U.S. at 765–766, 86 S.Ct. 1826. Lewis v. United States, 127 U.S.App.D.C. 269, 271, 382 F.2d 817, 819 (1967). The trial court so found and we agree.

### IV

■ Finally, we deal with the contention made in appellant's reply brief that since the Government admits that the benzidine test yields a positive response to substances other than blood the conviction of appellant must be set aside. The Government's brief states:

> "Appellee is constrained to inform this Court that substances other than blood will also yield a positive color reaction, including *rust, mud* and *shoe polish.* The initial positive reaction rises to conclusive evidence of the presence of blood only when it is supported by microchemical analysis revealing the presence of hemoglobin, a compound unique to the red corpuscles of vertebrates." (Emphasis added.) Government's br. at 8, n.6.

Appellant contends that his counsel did not

> have any reason to believe that the positive reaction which resulted could have been caused by any substance other than blood. The technician who conducted the test gave clear and unequivocal testimony as to the nature of the test, but never mentioned this very important fact.[5] The impression created by his testimony was that the test result positively demonstrated the

---

5. Appellant's brief states:
   We do not suggest that either the technician or the Government's trial attorney deliberately withheld the exculpatory facts concerning the test from appellant and his counsel.

presence of blood on appellant's penis.[6]

\*   \*   \*   \*   \*   \*

The fact-finding process was seriously tainted by the unqualified assertions of the Government witness [7] and reliance thereon by Government counsel during his closing argument. Since disclosure of all the facts with respect to the test "might have led the jury to entertain a reasonable doubt about appellant's guilt," the conviction cannot stand.

There might be some merit to this argument in a different context. What appellant here contends is that at trial the test was considered as proving that appellant's penis had been exposed to blood. We fail to see how that could in any way be prejudicial to the appellant since at trial he admitted that his penis had been so exposed shortly before the test was administered. At trial in his testimony he attempted to attribute it to another source,[8] and at closing argument his counsel stated, "It could be anybody's blood." While this later contention was too broad in view of the evidence of record which narrowed the possibilities to two persons, it did point out, what was not denied, that the test did not prove that it was the blood of the victim in this case. The test was never alleged to prove anything different than what appellant admits, *i. e.*, that his penis had recently been exposed to blood. Since he admitted that, the fact that it was an overstatement to claim that the test alone proved the same thing is in no way prejudicial to him. After such testimony, the only issue was whether the jury would believe the Government's testimony or appellant's explanation and the rest of his testimony—their verdict indicates that they believed the Government witnesses. It was well within their province so to find.

Affirmed.

---

6. Appellant's brief states:

This was the impression created at the pretrial suppression hearing as well. Judge Gesell's opinion states that appellant "arrived at the precinct at 6:00 p. m. and was formally charged at 6:25 p. m., after a benzidine test on his penis disclosed presence of blood."

7. Appellant's brief states:

The technician's testimony appears at transcript pages 97–100 and 187–188. The following interchange on cross-examination is illustrative:

"Q. And is it not also the case that your test is not the kind of test that indicates the person from whom the blood came? *It really says whether or not you have blood in the sample?* A *Yes sir, that is true.*" (Emphasis supplied) Tr. 100.

8. That rust, mud or shoe polish would be present in the small highly protected area where the test was administered is highly unlikely and appellant makes no such claim.