Raymond BROOKS, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 8284.

District of Columbia Court of Appeals.

Argued Oct. 15, 1975.

Decided Dec. 1, 1976.

Linda Huber, Washington, D. C., appointed by the court, for appellant.

Timothy J. Reardon, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and James F. McMullin, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER, NEBEKER, and HARRIS, Associate Judges.

HARRIS, Associate Judge.

This appeal involves a warrantless forced entry into appellant's apartment which resulted in his arrest and the seizure of certain physical evidence. Appellant was charged with single counts of rape, sodomy, simple assault, and threats to do bodily harm. D.C.Code 1973, §§ 22–2801, –3502, –504, and –507. In a jury trial he was acquitted of the rape and sodomy charges and found guilty on the assault and threats counts. He appeals the convictions on the ground that they rest upon evidence seized in violation of his Fourth Amendment rights, and contends the trial court erred in denying his pretrial motion to suppress. We conclude that the warrantless entry for the purpose of arrest was proper. However, on the record before us, we are unable to determine whether the post-arrest seizure of evidence fell within the proper limits of the "plain view" doctrine relied upon by the government. We therefore remand the case for further consideration of this issue. *See* D.C.Code 1973, § 17–306.

I

The events giving rise to this appeal took place over a three-hour period on the night of August 8 and the early morning hours of August 9, 1973. At approximately 10:30 p. m., the complainant was found in the seventh floor hall of an apartment building by a resident who had heard her cries for assistance. She was naked, distraught, and apparently had been beaten about the face. She said she had been forced to go to an apartment somewhere on the tenth floor, where she had been raped. Special Police Officer Walker was summoned; he took the victim back to that area in an attempt to locate the apartment. After conferring with night guard Epko, who had seen the complainant enter the building with appellant at about 9:30 that evening, he determined that the assault must have occurred in Apt. 1006 (appellant's apartment). The police were called.

Ultimately six police officers arrived at the building, the first at approximately 11:30 p. m. Several knocks on the door to Apt. 1006 brought no response. The door then was opened with a key provided by the resident manager, but entry was barred by a chain. The officers made additional demands of "Police! Open up!" Hearing no response, the officers, with the manager's assent, forced the door and entered the apartment at approximately 12:45 a. m.

Appellant, clad in undershorts, was found behind the bedroom door. He was arrested, handcuffed, and taken to the living room, where he remained for approximately 30 minutes before being removed from the apartment. Thereafter, Detective Franklin and Officer Laughery (a police technician) seized several items of bedding, a sample of mattress material, two pairs of slacks from a bedroom closet, a jacket from the hall closet, and a sweater from a living room table. It is the admission of this evidence at trial that appellant challenges. No warrant for the arrest or for the search and seizure had been obtained.

Appellant's pretrial motion to suppress was denied after an extensive evidentiary hearing. The trial court, relying upon *Dorman v. United States*, 140 U.S.App.D.C. 313, 435 F.2d 385 (1970) (en banc), and its factual determination that the evidence had been in imminent danger of destruction, concluded that there were sufficient exigent circumstances to justify both the warrantless entry and the seizure of the evidence. *See Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). *See also United States v. Santana*, 427 U.S. 38, 41–42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976).

At trial the complainant testified that she had been forced to go to the apartment by appellant, whom she believed to have been armed, and that she then was raped and sodomized. It was her testimony that appellant hit and choked her when she refused to commit fellatio. The defense theory was that a bargain for prostitution had been made. Appellant acknowledged that he and the complainant were in bed together, nude, but he contended that he could not achieve an erection and hence no sexual acts were committed. Appellant testified that when he attempted to pay the complainant only half of the allegedly agreed-upon price, she grabbed all of his money, whereupon he struck her.

## II

Appellant's first argument is that the warrantless forced entry violated his Fourth Amendment rights, and thus required the suppression of the evidence seized subsequent to such entry. Appellant begins by citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967):

[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions. [Footnotes omitted.]

One such exception has been recognized under the rubric of "exigent circumstances," [1] and turns upon a showing of "a need that could not brook the delay incident to obtaining a warrant." *Dorman v. United States, supra,* 140 U.S.App.D.C. at 320, 435 F.2d at 392. *See Dunston v. United States*, D.C.App., 315 A.2d 563, 565 (1974); *McGeehan v. Wainwright*, 526 F.2d 397 (5th Cir.), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976). It was principally upon this ground that the trial judge upheld the warrantless entry into appellant's apartment. Appellant contends that there were insufficient exigent circumstances to justify the officers' failure to obtain a warrant. We disagree.

■ In determining whether the entry may be sustained on the basis of exigent circumstances, the pertinent considerations are those set forth by the *Dorman* court [2] and enumerated in *United States v. Lindsay*, 165 U.S.App.D.C. 105, 110, 506 F.2d 166, 171 (1974):

(1) That a grave offense is involved, particularly a crime of violence;

(2) the suspect is reasonably believed to be armed;

(3) a clear showing of probable cause;

(4) a strong reason to believe that the suspect is in the dwelling;

(5) the likelihood of escape if not swiftly apprehended;

(6) a peaceful entry as opposed to "breaking"; and

(7) the time of entry (night or day).

1. *See Warden v. Hayden, supra. See also Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

2. *Dorman v. United States, supra,* 140 U.S.App.D.C. at 320–21, 435 F.2d at 392–93.

██ The propriety of the officers' conduct was exhaustively examined in a pretrial evidentiary hearing on appellant's motion to suppress. The trial court made certain factual determinations in reaching its decision to deny the motion, and those findings are not to be disturbed unless clearly erroneous. D.C.Code 1973, § 17–305. *See Lee Washington, Inc. v. Washington Motor Truck Transportation Employees Health and Welfare Trust,* D.C. App., 310 A.2d 604 (1973); *United States v. Lindsay, supra,* 165 U.S.App.D.C. at 109, 506 F.2d at 170.

██ Appellant does not dispute the court's conclusion that the police were dealing with a grave and violent crime. The victim was found disrobed, distraught, and bleeding, while crying that she had just been raped. The nature of the asserted offense was amply substantiated by her distress and visible injuries. However, appellant's first challenge under the *Dorman* doctrine is that the police had no grounds to "reasonably believe" that he was armed. (No weapon was found in his apartment.) The government argues that unapprehended rapists pose as great a threat to the community as unapprehended armed robbers. While community security is the basic concern underlying this criterion, we need not accept the lower threshold implied by the government's assertion. The exigent circumstances doctrine is to be applied to the facts as perceived by the police at the time of entry, not as subsequently uncovered. *See United States v. Lindsay, supra,* at 110, 506 F.2d at 171. The complainant testified that she believed that appellant had a weapon in his pocket, possibly a gun or a knife, which he had held against her side in forcing her from the street to his apartment. That account was relayed to the Metropolitan Police by Special Officer Walker. Where, as here, the victim, nude, bleeding, and bearing the obvious marks of an assault, expresses a credible belief that her assailant was armed, assuredly that criterion has been satisfied. *See generally Chappell v. United*

*States,* 119 U.S.App.D.C. 356, 342 F.2d 935 (1965). *Cf. Warden v. Hayden, supra.*

██ There is no real dispute as to probable cause. At the pretrial hearing, defense counsel conceded that the police had probable cause to believe that a rape had occurred in Apt. 1006 and that appellant had been the offender. The belief by Walker and Epko that appellant had assaulted the victim in his apartment was based not only on their personal knowledge of appellant's description, but more significantly on the fact that he had entered the building with the victim a little over an hour earlier. The trial court concluded that this information, relayed to the officers, provided sufficient probable cause for appellant's arrest. We agree. *See Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L. Ed.2d 142 (1964).

██ At the hearing appellant vigorously urged that the officers did not have "strong reason" to believe that he was in the dwelling to be entered. In rejecting this argument, the court found the circumstances to be similar to those underlying the "hot pursuit" rationale enunciated in *Warden v. Hayden, supra,* and concluded:

> The time frame within which the alleged rape occurred and the time in which she complained about it to the police officers was of such a small period of time that the likelihood was that the defendant had not left his apartment and was still in there.

As the police arrived at the scene less than two hours after the alleged offense, we find the court's conclusion to be adequately supported. *See Dunston v. United States, supra; Dorman v. United States, supra,* 140 U.S.App.D.C. at 321, 435 F.2d at 393.

██ The likelihood of a suspect's escape if he is not swiftly apprehended is a factor which is closely intertwined with the "hot pursuit" doctrine of *Warden v. Hayden, supra.* The underlying rationale is that a suspected criminal should not be permitted

to gain time for further evasion merely by placing a closed door between himself and the officers on his heels; that is, to require officers who reasonably believe themselves to be only several steps behind an individual who has just committed a serious and violent offense to break their pursuit in order to obtain a warrant would be to impose too great a cost upon society. The trial court found these principles applicable to the instant case. As such a short time had elapsed between the time the complainant fled her assailant and the arrival of the first officer at the scene, we agree. *See Dunston v. United States, supra.*

■ Appellant nevertheless argues that there was sufficient police presence at the apartment building to permit the posting of a sentry while a warrant was obtained, and thus the warrantless entry was unjustified. The trial court disagreed. Observing that blood and semen could be washed away, giving rise to a likely destruction of evidence, the court concluded that the warrantless entry was both justified and prudent. *Cf. Jones v. United States,* 113 U.S.App.D.C. 14, 17 n.10, 304 F.2d 381, 384 n.10, *cert. denied,* 371 U.S. 852, 83 S.Ct. 73, 9 L.Ed.2d 88 (1962). Under limited circumstances, the "likelihood of escape" inquiry properly includes consideration of the probability that evidence as well as the suspect may be lost.[3] *See Dorman v. United States, supra,* 140 U.S. App.D.C. at 319, 435 F.2d at 391. *See also Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). *Cf. Schmerber v. California,* 384 U.S. 757, 770–71, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Cupp v. Murphy,* 412 U.S. 291, 296, 93 S.Ct. 2000,

36 L.Ed.2d 900 (1973); *id.* at 298, 93 S.Ct. 2000 (Marshall, J., concurring). We are mindful of the danger that a preservation of the evidence rationale, if unrestrained, could undermine the Fourth Amendment's protections. However, where, as here, the suspect has been cornered at the scene of a very recent offense, and the crime is such that tangible evidence thereof readily may be eliminated, we cannot say that the trial court erred in concluding that the threat of the loss of evidence provided sufficient urgency to justify a warrantless entry.

■ The final inquiry under the *Dorman* doctrine concerns the nature of the entry itself. While the factors discussed above go to the existence of exigent circumstances, this consideration focuses on the extent of the intrusion upon Fourth Amendment rights, which in turn reflects the degree of urgency which must be present to justify such an intrusion. *See United States v. Lindsay, supra,* 165 U.S. App.D.C. at 111, 506 F.2d at 172; *Dorman v. United States, supra,* 140 U.S.App.D.C. at 321, 435 F.2d at 393. Appellant correctly observes that a warrantless forced entry into an individual's home late at night lies near the heart of the constitutional protections. *See Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Despite the gravity of the intrusion, the trial court concluded that the combination of circumstances, as understood by the officers at the time of their entry, provided sufficient urgency: the violent and brutal nature of the crime; the strong showing of probable cause; the recentness of the offense; and the likely destruction of evidence should entry be delayed. The court further concluded that under the principles embodied in D.C.Code 1973, § 23–591,[4] the

---

3. The court also relied upon the fact that all of the victim's clothing was found in the garbage chute room in the basement after appellant's arrest. However, as noted before, analysis under the *Dorman* doctrine involves a review of the facts known to the police at the time of their warrantless entry.

4. Subsequent to the events at issue, D.C.Code 1973, § 23–591 was repealed. The legislative history makes clear the congressional intent that forced entries by District of Columbia authorities thenceforth should be governed by the law developed under the analogous federal statute, 18 U.S.C. § 3109 (1970). *See* H.

manner of entry was reasonable.[5] *See Borum v. United States*, D.C.App., 318 A. 2d 590 (1974). We agree.

We are satisfied that the trial court gave proper consideration to the seriousness of the warrantless intrusion made by the officers. Its careful reasoning in the application of the exigent circumstances doctrine finds ample support in the extensive evidence taken at the pretrial hearing. We therefore find no reversible error in the trial court's conclusion that the warrantless forced entry was permissible and presented no grounds for suppression of the evidence subsequently seized. D.C.Code 1973, § 17– 305. *See United States v. Lindsay, supra*, 165 U.S.App.D.C. at 109, 506 F.2d at 170.

### III

 Appellant's second argument is that, assuming the legality of the entry, the post-arrest search of his apartment cannot be justified under any of the recognized exceptions to the Fourth Amendment's warrant requirement. *See, e. g., Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Our review is hampered by the fact that the trial court

failed to address specifically the validity of the post-arrest search and seizure as distinct from the question of the warrantless entry. In the absence of express findings on this issue, we are to determine if the denial of the motion to suppress is supportable under any reasonable view of the evidence. *See Ward v. United States*, D.C. App., 365 A.2d 378, at 381 n.3 (1976); *United States v. Lindsay, supra*, 165 U.S. App.D.C. at 109, 506 F.2d at 170; *Scarbeck v. United States*, 115 U.S.App.D.C. 135, 151, 317 F.2d 546, 562, *cert. denied*, 374 U. S. 856, 83 S.Ct. 1897, 10 L.Ed.2d 1077 (1963). Taking the evidence in the light most favorable to the government, as we must, we nonetheless are unable to determine the legality of the post-arrest seizure upon the record before us.

 At issue is the admissibility of certain articles of clothing, and bedding which reflected the presence of blood and semen. They were seized from the bedroom, the bedroom and hall closets, and the living room after appellant had been placed under arrest. It is the government's position that the post-arrest search and seizure may be sustained under the "plain view" exception to the warrant requirement.[6]

---

Conf.Rep.No.93–1442 (to accompany S. 3355), 93d Cong., 2d Sess. (Oct. 8, 1974). While 18 U.S.C. § 3109 speaks to forced entries to effect valid search warrants, the statute has been interpreted as also providing the standard for forced entries for the purpose of executing a warrantless arrest or conducting a warrantless search. *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed. 2d 828 (1968); *United States v. Glassel*, 488 F.2d 143 (9th Cir.), *cert. denied*, 416 U.S. 941, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1973). For this reason, and recognizing the similarity of the language of the two statutes, we are of the opinion that the same result would accrue under either law and thus need not consider the retroactive impact of the repeal of § 23–591. *See generally United States v. Wylie*, 149 U.S.App.D.C. 283, 462 F.2d 1178 (1972). *Cf. Matthews v. United States*, D.C.App., 335 A.2d 251 (1975).

5. It is undisputed that the officers made repeated loud announcements of their identity

and purpose, and waited for a response, both before opening the apartment door with the manager's key, and again before breaking the night chain (which itself was indicative of appellant's presence).

6. While the government relies primarily upon the plain view doctrine, neither the "exigent circumstances" nor the "search incident to arrest" exceptions would support the seizure. Once appellant had been removed from the apartment, the urgent peril to the evidence was eliminated. Similarly, the "search incident" exception, which rests upon the need for the protection of the arresting officer as well as the preservation of evidence, permits only a search of the person and the area from which that person might obtain a weapon or destructible evidence. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Where, as here, the suspect is clad only in undershorts and is immediately handcuffed and brought within the surveillance and control of several officers, the circumstances supporting the applicability of

*See Coolidge v. New Hampshire,* 403 U.S. 443, 464–73, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). There was testimony at the pre-trial hearing to the effect that the items seized were within plain view.[7] However, that circumstance, standing alone, does not end the necessary inquiry.

> [P]lain view *alone* is never enough to justify the warrantless seizure of evidence. [*Coolidge v. New Hampshire, supra,* at 468, 91 S.Ct. at 2039.] * * * [I]t is important to keep in mind that, in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the "plain view" doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal. [*Id.* at 465, 91 S.Ct. at 2037.]

The *Coolidge* Court went on to set forth the conjunctive requirements for the plain view exception: The officers must be lawfully present at the situs of the search and seizure, and the discovery of the evidence must be inadvertent. *Id.* at 466, 91 S.Ct. 2022.

 The first prong of the plain view doctrine, the lawfulness of the officers' presence, has both temporal and spatial dimensions. The propriety of the warrantless seizure depends upon when and under what circumstances the questioned evidence first came within view.[8] In the instant case, the sole authority for the officers' presence in the apartment was provided by the need to apprehend and arrest appellant. Once those objectives had been accomplished, the authority to conduct further investigation in appellant's home waned. After appellant had been arrested and taken from the bedroom, absent some other justification,[9] the officers' right to probe for evidence in that room terminated.[10] The question thus becomes wheth-

this exception shrink considerably. The "search incident" principle is further confined by the requirement that the search must be "substantially contemporaneous" with the arrest and limited to the "immediate vicinity" thereof. *Vale v. Louisiana,* 399 U.S. 30, 33–34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). In the instant case, the evidence may not have been gathered until perhaps more than an hour after the arrest, and possibly long after the suspect whose "arm's reach" might have provided the initial justification for such a search had been removed from the scene entirely. *See Chimel v. California, supra,* 395 U.S. at 763, 89 S.Ct. 2034; *United States v. Erwin,* 507 F.2d 937 (5th Cir. 1975); *United States v. Artieri,* 491 F.2d 440, 445 (2d Cir. 1974), *cert. denied sub nom. Gonzales v. United States,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 670 (1974).

7. Detective Franklin testified that the officers did not search "in drawers or under things", and indicated that the slacks had been visible through the partially open door of the closet. While we accept this undisputed testimony as true, we are somewhat troubled by other aspects of the record. Photographs of the interior of the bathroom (showing the bloody basin) were admitted, as were the soiled sheets and other material taken from appellant's bed without any foundation concern-

ing whether or not this evidence fell within the officers' natural observation; that is, whether the bathroom door was open or the bed in such a state of disarray as to permit the officers to come across the evidence within the reasonable course of arresting appellant.

8. "[T]he officer's presence at the vantage point from which he discovers the evidence in plain view must not amount to an unjustifiable intrusion into an area with respect to which defendant's expectations of privacy are protected by the fourth amendment." *United States v. Bradshaw,* 490 F.2d 1097, 1100 (4th Cir.), *cert. denied,* 419 U.S. 895, 95 S.Ct. 173, 42 L.Ed.2d 139 (1974). *See United States v. Cooks,* 493 F.2d 668, 670 (7th Cir. 1974), *cert. denied,* 420 U.S. 996, 95 S.Ct. 1437, 43 L.Ed.2d 679 (1975).

9. *E. g.,* where the officers conduct a post-arrest "protective search" of the entire dwelling to insure that no confederate lies in ambush. *See United States v. Peterson,* 173 U.S.App.D.C. 49, 522 F.2d 661, 665 (1975).

10. *See United States v. Carter,* 173 U.S.App. D.C. 54, 522 F.2d 666 (1975); *United States v. Erwin, supra* note 6; *United States v. Cooks, supra* note 8; *United States v. Bradshaw, supra* note 8, at 1101. *See also United States v. Artieri, supra* note 6; *United*

er or not the police came upon the disputed evidence in the normal and reasonable course of taking appellant into custody.

■■■ The record reveals what items were seized and where they were found in appellant's apartment, but the temporal relationship of their discovery to the arrest is uncertain. The fact that the seizures occurred after appellant had been removed from the bedroom, and perhaps not until some time after he had been taken from the apartment,[11] is not dispositive, for the time and circumstances of the discovery of the evidence—not its subsequent seizure—are determinative.[12]

■■■ We have carefully examined the entire record for evidence indicating that the initial discovery of the incriminating clothes and bedding was reasonably contemporaneous with the arrest. However, at neither the suppression hearing nor the trial did there emerge a clear explanation of when and under what circumstances the officers became aware of the

challenged evidence. Even if there is a sufficient basis in the record for concluding that the items were in fact within plain view,[13] the speed with which the apprehension and arrest were consummated, and the breadth and duration of the post-arrest activities in appellant's apartment, raise a substantial possibility that some (if not all) of the evidence was not found (as distinguished from being physically seized) until fatally remote from the arrest.[14] We accordingly reach the limited conclusion that the record before us does not adequately establish the "lawful presence" necessary for the plain view exception.

■■■ The second aspect of the plain view doctrine is the requirement that the evidence be discovered "inadvertently". While the lawful presence criterion depends upon the timing and circumstances of the discovery, this second consideration turns upon the motivation of the officers in the activities which unearthed the disputed evidence. If the discovery were expected and constituted the principal pur-

States v. Gamble, 473 F.2d 1274 (7th Cir. 1974). In considering the "search incident" exception as providing authority for the warrantless intrusion into areas within the arrestee's reach the Supreme Court has declared: "There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less." Chimel v. California, supra, 395 U.S. at 763, 89 S.Ct. at 2040 [footnote omitted]. See also Morrison v. United States, 104 U.S.App.D.C. 352, 356, 262 F.2d 449, 453 (1958) ("A man's home is just as private when he is not there as when he is.").

11. Following their entry into appellant's apartment, the officers moved through the living room and down the hall to the second bedroom, where appellant was found behind the closed door. He was immediately arrested, handcuffed, and taken to the living room, where he remained for approximately 30 min-

utes under the surveillance of one or more officers until being removed from the apartment. In response to Detective Franklin's call from the apartment, Officer Laughery, of the mobile crime lab, reported to the scene and inspected the areas indicated by Franklin. The seizure of some or all of the evidence apparently did not occur until after appellant had been taken away.

12. If, as may have been the case, the officers came upon the evidence while lawfully present in the apartment, that is, within the reasonable course of appellant's arrest, the fact that the actual seizures did not occur until after the arrest would not necessarily taint the evidence. Cf. United States v. Wright, 146 U.S.App.D.C. 126, 449 F.2d 1355 (1971), cert. denied, 405 U.S. 947, 92 S.Ct. 986, 30 L.Ed. 2d 817 (1972).

13. See note 7, supra.

14. The fact that some of the evidence might fall outside the plain view exception would not preclude the admission of other items properly seized. See United States v. Thweatt, 140 U.S.App.D.C. 120, 126 n. 6, 433 F.2d 1226, 1232 n. 6 (1970).

pose of the intrusion,[15] in the absence of an adequate reason why a warrant could not have been obtained, the plain view exception is inapplicable.[16] Satisfaction of the inadvertency criterion would require the discovery of the stained bedding and the incriminating clothes to have been a subordinate aspect of the arrest itself, or the result of some justifying purpose other than merely gathering evidence.[17]

The record is inconclusive. The fact that Detective Franklin summoned Officer Laughery, a mobile crime lab technician, to the apartment after the arrest, and that they subsequently "processed the apartment as a crime scene", does not compel the conclusion that there was a lack of the necessary inadvertency. It is possible, of course, that Franklin may have simply sought the expert assistance of a technician in evaluating the evidence which already had been inadvertently unearthed in the normal course of the arrest. However, in light of the significant constitutional interests at stake, we may not indulge in such speculation on the incomplete record before us.

At the bottom of this appeal is the fact that inadequate attention was paid in the trial court to the issue of the post-arrest search and seizure as distinct from the question of the warrantless entry and arrest. While the trial judge was not required to make factual findings in ruling on the motion to suppress, he did deal with the evidence in some detail. However, he did not specifically address the plain view argument offered by the government, and the record does not permit us to determine the critical facts. The court upheld the officers' activities on the basis of the *Dorman* doctrine and the exigent need to pre-

15. The argument logically may be made that where one corners an alleged rapist at the scene of the offense, the discovery of tangible evidence of the crime, such as the stained sheets, quite naturally would be within the expectancy of the officers. The critical distinction lies in the primary purpose of the warrantless intrusion. Where the officers seek essentially to apprehend the suspect, evidence found in the reasonable course of achieving that objective is not tainted. If, however, the primary purpose of the initial intrusion, or that of a further intrusion subsequent to the arrest, is the gathering of evidence, the inadvertency requirement cannot be satisfied. *See United States v. Cushnie,* 488 F.2d 81 (5th Cir. 1973), *cert. denied,* 419 U.S. 968, 95 S.Ct. 233, 42 L.Ed.2d 184 (1974); *United States v. Sheard,* 154 U.S. App.D.C. 9, 13–14, 473 F.2d 139, 143–44 (1972), *cert. denied,* 412 U.S. 943, 93 S.Ct. 2784, 37 L.Ed.2d 404 (1973).

16. Although the *Coolidge* Court declared that "[t]his Court has never permitted the legitimation of a planned warrantless seizure on plain view grounds," 403 U.S. at 471 n. 27, 91 S.Ct. at 2041, the government asserts that subsequent case law signals a demise of the inadvertency requirement. We read the circuit court decisions relied upon by the government as merely reiterating and developing the principles announced in cases such as *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and *Warden v. Hayden, supra,* and their progeny, to the effect that where the search involves well-recognized justifications such as a mobile situs or particular urgency, a warrantless seizure may be sustained. As these exceptions are distinct from that of the plain view doctrine, in the absence of further guidance from the Supreme Court we decline to abrogate the inadvertency requirement. *Cf. United States v. Cooks, supra* note 8, at 671–72; *United States v. Bradshaw, supra* note 8, at 1101 n. 3.

17. If, for example, the officers had gone to the closet to determine whether a confederate lay in ambush (*see United States v. Peterson, supra* note 9), or to provide appellant with clothes, [*see Walker v. United States,* D.C.App., 318 A.2d 290 (1971); *accord United States v. Titus,* 445 F.2d 577 (2d Cir.), *cert. denied,* 404 U.S. 957, 92 S.Ct. 323, 30 L.Ed.2d 274 (1971)], and then discovered the challenged slacks, the requirement would have been satisfied. Similarly, if they had examined the bedding to see if a weapon lay within appellant's reach, and thus revealed the bloody sheets (or, of course, if the stains on the sheets had been readily apparent when the officers entered the bedroom), the discovery would have been inadvertent. If, on the other hand, the closets were searched for the purpose of finding clothing matching the description given by the victim, or if the bed was stripped in search of evidence of the alleged offenses, [*cf. United States v. Boswell,* D.C.App., 347 A.2d 270, 273 (1975)], the plain view exception would be unavilable.

serve the evidence. *Dorman*, however, is inapposite. In that case, the police came across a suit with clearly visible price tags linking it to the crime while searching a closet for the suspected felon. Here, because the suspect was apprehended almost immediately upon entry into the dwelling (and there is no indication that the officers feared the presence of a confederate), the circumstances appear to have provided no justification for the further intrusion into other areas of the apartment. Similarly, as the only exigent circumstance suggested by the record was the need to prevent the destruction of evidence, once appellant was securely under the control of the officers, that urgency had passed.[18] *See Dorman v. United States, supra,* 140 U.S.App.D.C. at 320–21, 435 F.2d at 392–93; *Fixel v. Wainwright,* 492 F.2d 480, 482 n.1 (5th Cir. 1974).

We are not suggesting that absent a warrant the police must blind themselves to items of evidence which fall naturally within their sight and grasp in the course of executing a lawful arrest and the reasonable removal of the arrestee from the scene. *Cf. United States v. Thweatt,* 140 U.S.App.D.C. 120, 125, 433 F.2d 1226, 1231 (1970). We simply observe that under our constitutional scheme, the arrest and the search and seizure must stand on their own footings. Where, as here, the authority for the search depends solely upon the arrest, once the arrest is or reasonably should have been completed, the authority for the distinct intrusion of the search is at an end. A desire to gather evidence, while understandable, will not by itself sustain the continued warrantless displacement

of appellant's Fourth Amendment rights. *See Coolidge v. New Hampshire, supra; United States v. Erwin, supra; United States v. Artieri, supra.*

▮▮▮ It is fundamental that, particularly where the situs of the law enforcement activity is an individual's home, the protections of the Fourth Amendment do not cease with a valid arrest. *See Coolidge v. New Hampshire, supra. See also United States v. Edwards,* 415 U.S. 800, 808–09, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). As the authority for the initial warrantless intrusion into appellant's apartment was not a license for a search unlimited in time and area,[19] unless the circumstances of the seizure meet the criteria of one of the recognized exceptions to the warrant requirement, it would have been erroneous to deny the motion to suppress. Moreover, the burden of establishing the existence of circumstances warranting application of doctrines such as the plain view exception rests upon the government. *Coolidge v. New Hampshire, supra,* 403 U. S. at 455, 464–73, 91 S.Ct. 2022.

▮▮▮ As we have noted, while the evidence possibly could be interpreted as demonstrating that the items in question were in plain view, the record is inconclusive on the critical temporal and spatial relationships between appellant's arrest and the discovery of the incriminating material. Where, as here, the authority for the intrusion rested solely upon the need for the speedy apprehension of a suspected felon, and the record suggests that the officers' activities went beyond the time and area required for that purpose,[20] the legality of

---

18. The record itself suggests that the objective could have been achieved with a lesser intrusion upon appellant's constitutional rights. Given the number of officers present, a guard could have been posted until a warrant was obtained. *See United State v. Lindsay, supra,* 165 U.S.App.D.C. at 115 n. 6, 506 F.2d at 176 n. 6; *United States v. Bradshaw, supra* note 8, at 1103–04. In the alternative, Officer Laughery, of the mobile

crime lab, could have secured the necessary authority while en route to the scene.

19. *See* note 10 and text, *supra.*

20. The record indicates that the search involved areas other than the bedroom where appellant was arrested, and that the officers remained at the apartment for as much as two hours after he was taken away. *Compare United States v. Carter, supra* note 10.

the seizures cannot be resolved without a proper determination that the initial discovery of the evidence occurred within the normal and reasonable course of the entry and the arrest. *See generally McDonald v. United States*, 335 U.S. 451, 455–56, 69 S. Ct. 191, 93 L.Ed. 153 (1948).

IV

■ Assuming *arguendo* that the seizures could not be sustained under any of the exceptions to the warrant requirement, it remains for us to consider whether the resulting error in denying appellant's motion to suppress would be harmless. As we deal with an asserted violation of a constitutional right, the pertinent inquiry is whether the error can be said to have been "harmless beyond a reasonable doubt." *See Chapman v. California*, 386 U.S. 18, 21–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ Analysis of the harmless error issue includes examination of the impact of the tainted evidence upon the outcome of the adjudication, upon the trier as the finder of guilt, and upon the nature of the defense. *See Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Fahy v. Connecticut*, 375 U.S. 85, 90–91, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). The traditional approach has been to focus on whether the untainted proof is so overwhelming

that it fairly may be said that the same verdict would have been reached absent the challenged evidence.[21]

Measured by that standard, it appears unlikely that the verdicts would have been different in the absence of the disputed items of clothing and bedding. The clothes bear primarily on the issue of identification, a point which is undisputed. The pillow cases and bedding, being stained with blood of the same type as that of the complainant, certainly would be relevant to the assault charge of which appellant stands convicted. However, appellant concedes that he did in fact strike the complainant, and the record contains overwhelming and undisputed evidence that there had been considerable bleeding from her facial wound. The stained bedding is somewhat inconclusive on the critical question of whether appellant struck the complainant in conjunction with threats made in the course of alleged sexual abuse, or, in keeping with his version, in response to her attempted robbery.[22] It is apparent that appellant's conviction turned primarily on the question of credibility, and that, as to the assault and threats, the jury chose to believe the testimony of the complainant. *Cf. Milton v. Wainwright, supra*, 407 U.S. at 377–78, 92 S.Ct. 2174.

■ However, as noted above, analysis under the harmless error doctrine should not be limited to superficial inquiry as to whether the same verdict would have been possible absent the tainted evidence. Even

21. *See Milton v. Wainwright, supra; Null v. Wainwright*, 508 F.2d 340 (5th Cir.), *cert. denied*, 421 U.S. 970, 95 S.Ct. 1964, 44 L.Ed. 2d 459 (1975). Alternative formulations have asked whether the illegal evidence "shrinks to insignificance" in the context of the whole case [*United States v. Anderson*, 500 F.2d 1311, 1318–19 (5th Cir.), *rehearing en banc denied*, 5 Cir., 504 F.2d 760 (1974); *see Schneble v. Florida, supra*]; or whether such evidence can be dismissed as merely cumulative [*see Harrington v. California, supra; Chase v. Crisp*, 523 F.2d 595, 599–600 (10th Cir. 1975), *cert. denied*, 96 S.Ct. 1418, 424 U.S. 947, 47 L.Ed.2d 354 (1976)]; or have

sought to determine the proximity of the disputed proof to the central question of guilt [*see United States ex rel. Mealey v. Delaware*, 489 F.2d 993 (3d Cir. 1974); *see also Fahy v. Connecticut, supra*].

22. Appellant testified that the affray occurred in the bedroom, and that the complainant may have fallen across his bed; hence, the sheets would not necessarily indicate a situs in conflict with appellant's version. *See United States v. James*, 153 U.S. App.D.C. 404, 473 F.2d 115 (1972); *United States v. Smith*, 152 U.S.App.D.C. 229, 470 F.2d 377 (1972).

where it may be fairly said that the government's proof assuredly would have led to conviction without the disputed items, we also must consider the likely effect of the material on the trier itself; that is, its "probable impact . . . on the minds of an average jury." *Harrington v. California, supra,* 395 U.S. at 254, 89 S.Ct. at 1728. *See Reed v. Wolff,* 511 F.2d 1369 (8th Cir. 1975). Resolution of this question involves an examination of the nature of the particular evidence, the emphasis placed on it by the court or the parties, the possibility of a compromise verdict, and indicia of the trier's belief that the case is "close" (such as the length of deliberations and questions raised by the jury).

 While there is nothing remarkable about the admission of appellant's clothing, it might be argued that the introduction of bedding bearing blood and semen stains would be inflammatory and would preclude a finding of harmlessness.[23] Although appellant was acquitted of the counts charging sexual offenses, the possibility remains that such evidence produced prejudice in the form of a compromise verdict among the charges. The prosecution made repeated references to the challenged evidence in conjunction with both the assault and the alleged sexual abuse. Furthermore, the jury deliberated for approximately eight hours before returning verdicts on the four counts, and twice sought further guidance on the nature and elements of the charges.[24] These circumstances raise the possibility that the disputed bedding, if seized in contravention of appellant's Fourth Amendment rights, may have impermissibly

influenced the jury in their resolution of the assault and threats counts. We conclude that it is impossible to say with the requisite certitude that the outcome could not have been the result of a compromise induced by the challenged evidence. *See Chapman v. California, supra,* 386 U.S. at 21–24, 87 S.Ct. 824.

Analysis under the final criterion, *i. e.,* whether the evidence impermissibly impinged on the character of the defense, is similarly uncertain. *See Fahy v. Connecticut, supra,* 375 U.S. at 90–91, 84 S.Ct. 229. The bedding (notwithstanding the presence of semen, which conceivably could have been attributable to another occasion) did not conclusively demonstrate a chain of events inconsistent with the account given by appellant.[25] However, it has been held that where it is apparent that illegal evidence has significantly restrained the nature of the defense by inducing statements or admissions that would not otherwise have been forthcoming, the error cannot be said to have been harmless. *See United States v. Basurto,* 497 F.2d 781, 790–91 (9th Cir. 1974); *Young v. Maryland, supra* note 23; *United States ex rel. Chennault v. Smith,* 366 F.Supp. 717 (E.D.N.Y.1973), *aff'd,* 495 F.2d 1367 (2d Cir. 1974), *cert. denied,* 419 U.S. 986, 95 S.Ct. 245, 42 L. Ed.2d 194 (1975). In the instant case the question becomes whether appellant would have conceded his nude, bedroom encounter with the complainant and his striking her had he not been confronted with physical evidence which firmly corroborated both his identification by the complainant and the fact that her physical injuries oc-

---

23. The inflammatory character of any illegal evidence should not, however, be taken out of context, and must be considered with the remainder of the evidence and the case as a whole. *Compare Null v. Wainwright, supra* note 21; *Young v. Maryland,* 455 F.2d 679 (4th Cir.), *cert. denied,* 407 U.S. 915, 92 S.Ct. 2450, 32 L.Ed.2d 691 (1972); *Gladden v. Frazier,* 388 F.2d 777, 783 (9th Cir. 1968), *aff'd sub nom. Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). *See also Schneble v. Florida, supra.*

24. The first note from the jury requested a copy of the charges, and a second asked, *inter alia,* the meaning of the word "threats". A copy of the indictment was given to the jurors and they were reinstructed on the elements of threats to do bodily harm.

25. *Compare United States v. James, supra* note 22, *United States v. Smith, supra* note 22, and *Young v. Maryland, supra* note 23, *with Gladden v. Frazier, supra* note 23.

curred in his bedroom. We need not determine whether the possibility of such an influence on the defense would, of itself, preclude a finding of harmlessness, for we conclude that taken together with the possibility of an impact on the jury's verdict, the asserted error cannot be considered to be "harmless beyond a reasonable doubt" on the basis of the existing record.

### V

 In summary, we conclude that the warrantless forced entry into appellant's apartment was consistent with the principles enunciated in *Dorman v. United States, supra,* and we uphold the trial court's determination that the entry did not contravene appellant's Fourth Amendment rights. However, on the separate issue of the warrantless seizures of evidence which followed appellant's arrest, the incompleteness of the record precludes a proper determination of the legitimacy of the officers' conduct. Because we are unable to conclude that the introduction of the fruits of their activity was harmless beyond a reasonable doubt, we remand the case for a further hearing. Such a proceeding shall be limited to the development of sufficient facts to permit rulings as to whether the discovery and taking of appellant's clothes and bedding fall within the proper limits of the plain view doctrine. *Cf. Tate v. Kelley,* D.C.Mun.App., 129 A.2d 855 (1957). Upon an adequate showing by the government that the officers inadvertently unearthed this evidence within the normal and reasonable course of appellant's apprehension, the convictions may stand. If, on the other hand, after such further proceedings the trial court concludes that the conduct of the officers as to all of the physical evidence cannot be sustained under a proper exception to the warrant requirement, the court should make determinations as to (1) which items should be considered inadmissible, and (2) whether the legal sig-

nificance of any such item renders its prior admission harmless beyond a reasonable doubt. If the latter question is answered in the negative, a new trial should be ordered.[26] *See Kolod v. United States,* 390 U.S. 136, 88 S.Ct. 752, 19 L.Ed.2d 962 (1968). *See also Cureton v. United States,* 130 U.S.App.D.C. 22, 27, 396 F.2d 671, 676 (1968); *United States v. Hand,* 472 F.2d 162 (5th Cir. 1973).

*Remanded.*

---

**26.** We do not, of course, remove the government's right to appeal from a suppression or-

der, or the defendant's right to appeal from a reaffirmation of his convictions.